

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD86215 |
| | ) | |
| ALFRED HAKEEM CHISM, | ) | Opinion filed:  June 25, 2024 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI**
**THE HONORABLE DANIEL R. GREEN, JUDGE**

Division Three:  Cynthia L. Martin, Presiding Judge,
Mark D. Pfeiffer, Judge, and Edward R. Ardini, Jr., Judge

Alfred Hakeem Chism, Jr. ("Chism") appeals his convictions following a bench trial before the Circuit Court of Cole County ("Trial Court") in which he was found guilty of murder in the second degree and armed criminal action. Chism argues on appeal that the State produced insufficient evidence to establish beyond a reasonable doubt that he did not act in lawful self-defense. We affirm.

## Factual and Procedural Background

Chism was charged by indictment with the class A felony of murder in the first degree and the unclassified felony of armed criminal action in connection with the shooting

death of Victim. Following Chism's waiver of his right to a jury trial, the case was tried to the Trial Court. The evidence adduced in a light most favorable to the verdict is as follows:[1]

In the early morning hours of August 27, 2018, Chism was at home watching television when his doorbell rang repeatedly. The noise from the doorbell awoke Chism's mother ("Mother"), who was asleep upstairs. Chism looked out the window and saw Victim at the door, grabbed his gun, and opened the primary wooden front-door ("front door"). There was a glass storm-door ("glass door") that remained closed. Victim was standing on the other side of the glass door. Mother was near Chism when he opened the front door.

Victim requested that Chism come outside and Chism told Victim to leave. They repeated this exchange two more times. Victim's hands were at his side and he made no attempt to open the glass door to enter the home. Victim did not threaten Chism with a weapon and Chism did not observe a weapon on Victim's person. After Chism told Victim to leave a third time, Chism opened the glass door and shot Victim five times.

Chism called emergency services to report the shooting, as did one of his neighbors. Victim was found by law enforcement lying on the front steps outside Chism's residence with blood pooling near his head. Victim's feet were nearer to the entrance of the home while his head was situated at the bottom of the steps closer to the street. Shell casings

---

[1] *See State v. Shaw*, 592 S.W.3d 354, 357 (Mo. banc 2019) ("When reviewing the sufficiency of the evidence, the standard of review on appeal from a bench-tried case is the same as the standard used on appeal of a case tried to a jury. To determine whether the evidence presented was sufficient to support a conviction . . . this Court does not weigh the evidence but rather accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict." (internal citations and marks omitted)).

were found outside the home in the area of the stairs leading to the entrance of the residence. Two of Chism's neighbors reported hearing three gunshots, a short pause, and then a few additional shots. According to the Medical Examiner, Victim suffered five gunshot wounds: two to his face, two to his chest, and one to his lower back. The Medical Examiner stated that the locations of the gunshot wounds were consistent with "someone trying to get away or contort[] their body, rolling, darting, moving away."

When law enforcement arrived, Chism exited the residence with his hands up and was detained. The Jefferson City Police Officer ("Officer") who detained Chism stated that Chism "spontaneously" said that Victim was "harassing him and he was defending his – he was protecting his family." Chism informed Officer that the weapon used to shoot Victim could be found in the guest-bedroom. When law enforcement recovered the gun, its magazine was empty.

Chism was taken to the Jefferson City Police Department and submitted to an interview during which he admitted to killing Victim. Chism indicated that Victim, who he had known since childhood, claimed to be in love with him but Chism denied the existence of a romantic relationship. Later in the interview, Chism altered his story and admitted to a single sexual encounter with Victim a few months prior to the shooting, but insisted that he had made clear to Victim that he was not interested in continuing a romantic relationship. Chism indicated that he was "scared" when Victim appeared at his home in the middle of the night because of Victim's prior behavior. Chism described an encounter with Victim three days before the shooting, in the early morning of August 24, 2018, when Victim had come to Chism's home after texting that he was going to "smack[] the fuck

3

outta" Chism. Victim arrived at Chism's residence but left after Chism threatened to call the police. Chism stated that he did not believe Victim owned any weapons, that Victim had never threatened to hurt him with a weapon, and that he and Victim had never been involved in a physical altercation with each other.

During the interview, Chism stated that he "didn't open the glass part [of the door] until [he] left the shots." Chism never claimed that Victim attempted to open the glass door, nor did Chism assert that Victim gestured towards the glass door in any way. Chism stated that Victim didn't put his arms up or try to run when Chism pulled his gun because "it just kind of happened quick because when I pulled out I just let it go."

The defense's theory was largely founded on Victim having opened the glass door, that he did so in an attempt to "unlawfully enter the house[,]" and that protective force was necessary to defend against what Chism believed was the imminent use of unlawful force by Victim. Mother testified that she was with Chism at the front door throughout the encounter, standing "up against the wall" to the left of the front door. While she did not see who opened the glass door, she believed that Victim had to have done so due to the lack of damage done to the glass door. She explained that Chism opened the front door, had the gun in his right hand behind the door, moved his right arm around the door, raised his arm straight out, and fired the gun. Chism also produced a crime scene reconstruction expert who opined that it was Victim who had opened the glass door.[2]

---

[2] In reaching his opinion, Expert relied on Mother's recollection of the events, Chism's interview with law enforcement, and his 2019 review of the case file.

4

Law enforcement recovered text messages from Chism's phone. The messages indicated that the romantic relationship between Chism and Victim was more than the single sexual encounter acknowledged by Chism and had lasted for over a year. As to the events of the early morning hours of August 24 (three days before the shooting) referenced by Chism in his interview, the text messages revealed that Chism and Victim had made plans for Victim to pick Chism up at his home on August 23, 2018, but Chism began ignoring Victim's messages. Victim became upset and sent multiple messages to Chism. Victim told Chism to "[g]o ahead and block me on everything then g. You did this to yourself. I begged you to leave me alone if you were gonna keep doin this." Victim then posted a video on social media that upset Chism. Chism and Victim continued to exchange messages until Victim appeared at Chism's home in the early morning hours of August 24. Shortly after Victim left Chism's home at Chism's request, Chism and Victim exchanged more messages. In those texts, Chism admitted that he had feelings for Victim and expressed concern that Victim was going to publicly disclose their relationship. Victim apologized to Chism and they made plans to get together later in the day on August 24.

The messages sent between Chism and Victim on August 26, leading up to the shooting early on August 27, indicate that Chism wanted to end the relationship with Victim. Victim sent multiple texts stating that he wanted to speak with Chism. None of the messages Victim sent threatened physical violence. Victim did express an intent to do harm to himself indicating that he was "about to pop these pills[,]" and he was "writing this as the last thing" Chism would hear from him. Victim's final text message to Chism was sent approximately twenty-five minutes before the shooting.

5

Chism filed motions for judgment of acquittal at the conclusion of the State's case and again at the conclusion of all the evidence arguing that the State had failed to meet its burden of establishing that Chism was not legally justified in shooting Victim. These motions were denied by the Trial Court.

The Trial Court found Chism guilty of the lesser-included offense of murder in the second degree and armed criminal action. Chism was sentenced to concurrent terms of twenty-five years for second-degree murder and five years for armed criminal action.

This appeal follows.

## Analysis

Chism's sole point on appeal argues that the Trial Court committed error when it denied his motions for a judgment of acquittal because "the State failed to prove beyond a reasonable doubt that Mr. Chism did not act in lawful self-defense."

> In a bench-tried case, we review a trial court's ruling on a motion for judgment of acquittal to determine whether there was sufficient evidence from which the trial court could have found the defendant guilty beyond a reasonable doubt. We apply the same standard of review for sufficiency-of-the-evidence challenges in bench-tried cases as in jury-tried cases. Our review is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt. Our review does not assess whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Sinks*, 652 S.W.3d 322, 334 (Mo. App. E.D. 2022) (internal citations and marks omitted). "A person is entitled to acquittal as a matter of law on the basis of self-defense

6

only if there is undisputed and uncontradicted evidence clearly establishing self-defense." *State v. Williams*, 608 S.W.3d 205, 209 (Mo. App. W.D. 2020). "Where there is conflicting evidence or when different inferences can reasonably be drawn from the evidence, whether the defendant acted in [self-defense] is a question for the trier of fact." *Id.* It is the responsibility of the trier of fact, not this Court, to weigh the reliability and credibility of the witnesses. *See State v. Allison*, 845 S.W.2d 642, 645 (Mo. App. W.D. 1992).

Chism was convicted of murder in the second degree for the killing of Victim.[3] Chism has never disputed that he knowingly shot and caused the death of Victim. Instead, Chism maintains that the shooting of Victim was legally justified. Thus, the issue is whether the State produced sufficient evidence to support a finding beyond a reasonable doubt that Chism did not shoot Victim in lawful self-defense. *See Sinks*, 652 S.W.3d at 334 ("Our review is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." (internal marks omitted)).

Generally, self-defense permits a person to "use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself . . . from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person . . . ." Section 563.031.1 RSMo.[4] Deadly force

---

[3] "A person commits the offense of murder in the second degree if he or she: (1) [k]nowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person[.]" Section 565.021.1 RSMo. 2016.

[4] All statutory references are to the Revised Statutes of Missouri 2016 unless otherwise noted.

is justified if "he or she reasonably believes that such deadly force is necessary to protect himself . . . or another against death, serious physical injury, or any forcible felony." § 563.031.2(1). The defendant must inject the issue of justification. § 563.031.5.

Chism argues, and the State does not challenge, the castle doctrine, codified in sections 563.031.2(2-3), is applicable to the present situation. "Under the castle doctrine, a person need not face death, serious physical injury or any forcible felony to respond with deadly force." *State v. Straughter*, 643 S.W.3d 317, 322 (Mo. banc 2022) (noting that in order to use deadly force under this section, the requirements of section 563.031.1 must also be met). "Rather, Missouri's castle doctrine provides that a person is justified in using deadly force 'to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person' and '[s]uch force is used against a person who unlawfully enters, remains after unlawfully entering or attempts to unlawfully enter a dwelling, residence, or a vehicle lawfully occupied by such person.'" *Id.* at 321-22.[5] Thus, to enjoy the protections of the castle doctrine, an individual must possess "a reasonable belief in the use of actual or imminent unlawful force by another to justify deadly force." *Id*. at 322 n.7. Where, like here, a defendant specifically claims he was justified in using deadly force under the castle doctrine, the burden is on the State to prove "beyond a reasonable doubt that the defendant did not reasonably believe

---

[5] Section 563.031.2(3) expanded the castle doctrine to protect individuals using protective force against a person "who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter private property that is owned or leased by an individual, or is occupied by an individual who has been given specific authority by the property owner to occupy the property[.]"

that the use of such force was necessary to defend against what he or she reasonably believed was the use or imminent use of unlawful force." *Sinks*, 652 S.W.3d at 337.

In his briefing to this Court, Chism argues that he was "scared" of Victim, and it was reasonable, based on "uncontroverted facts," for him to believe "the use of deadly force was necessary to protect himself and his mother against the imminent use of unlawful force." To support his claim that he reasonably believed that the use of unlawful force by Victim was imminent as Chism stood at the front door, Chism argues Victim attempted to open the glass door and references statements from a series of text messages with Victim going back multiple days prior to the shooting in which Victim expressed strong feelings over Chism ignoring Victim's texts, as well as Chism's efforts to end their relationship. The State does not dispute that Chism sufficiently injected the issue of self-defense into the case and thereby shifted the burden to the State to establish that Chism was not legally justified in shooting Victim.

However, Chism's argument that the State failed to produce evidence sufficient to defeat his claim of self-defense is without basis. Chism's defense focused on who opened the glass door, and argues that "[i]f [Victim] in fact opened the [glass] door . . . then the most essential element of the castle doctrine must be resolved in favor of Mr. Chism, that being an attempted unlawful entry to the residence." The State countered this proposition with Chism's own statement in which he asserted that it was *him*, not Victim, who opened the glass door immediately prior to shooting Victim.[6] Thus, the State plainly produced

---

[6] Chism stated in his interview with police that he "didn't open the glass part [of the door] until [he] left the shots."

9

sufficient evidence from which the Trial Court could resolve this "most essential element" in favor of the State.

Chism additionally makes the more general assertion that if he "had the contemporaneous belief that [Victim] posed the immediate threat of the unlawful use of physical force . . . then Mr. Chism was undoubtably justified in using the deadly force given the circumstances." However, this "belief" must be reasonable under the attendant circumstances and the State presented substantial evidence disputing any such claim. According to Chism, Victim was simply standing on the steps of the residence with his empty hands at his side. Victim did not physically or verbally threaten Chism during the encounter prior to the shooting. In fact, the only evidence that could properly be characterized as a threat made by Victim toward Chism was contained in a text message in which Victim stated that he was going to smack "the fuck outta [Chism]." However, that message was sent several days prior to the shooting. Moreover, text messages sent after Victim had gone to and was told by Chism to leave Chism's home early on August 24, reveal that the two made plans to get together later the same day. Chism's willingness to get together with Victim soon after the encounter on August 24 casts considerable doubt over any claim that Victim intended the text to be a threat or, more importantly, that Chism interpreted it as a threat.[7] Regardless, the August 24 text was remote in time to the shooting of August 27 and Chism's effort to use it as a critical link in the chain to legally justify his

---

[7] A later message from Victim indicated that he only threatened Chism to get him to respond. *See State v. Bruner*, 541 S.W.3d 529, 538 (Mo. banc 2018) ("Words alone are insufficient to support a claim of self-defense.").

killing of Victim three days later must fail. *See Straughter*, 643 S.W.3d at 323 (The castle doctrine "does not apply if the threat of unlawful force has subsided[.]").

The record confirms that the State introduced evidence contradicting Chism's claim that he was lawfully justified in his use of deadly force. As a result, the Trial Court properly denied his motions for judgment of acquittal. *See Williams*, 608 S.W.3d at 211 (When the State introduces evidence to contradict the defendant's claim of self-defense, the defendant is "*not* entitled to acquittal as a matter of law, but rather, that the question of whether he was justified in acting in defense of another was a question of fact . . . ."). *See also State v. Henderson*, 311 S.W.3d 411, 414 (Mo. App. W.D. 2010) ("Where there is conflicting evidence or when different inferences can reasonably be drawn from the evidence, whether the defendant acted in self-defense is a question for the trier of fact."). It therefore was a question of fact for the Trial Court—as the trier of fact—to determine whether the State established beyond a reasonable doubt that Chism did not act in justifiable self-defense. *See Sinks*, 652 S.W.3d at 344 ("In a bench trial, the trial court is the proper factfinder and determines if the circumstances justify self-defense, and here, the trial court found that they did not."). In engaging in this task, the finder of fact "may choose to accept or reject all, some or none of the testimony of any witness." *Williams*, 608 S.W.3d at 209 (internal marks omitted). Viewing the evidence and all reasonable inferences in the light most favorable to the verdict, we find that there was sufficient evidence to support the Trial Court's finding, beyond a reasonable doubt, that Chism was not legally justified in shooting Victim. *See State v. Sander*, 683 S.W.3d 85, 93 (Mo. App. W.D. 2023).

Point denied.

11

## Conclusion

For the foregoing reasons, the judgment of the Trial Court is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.